**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NEW JERUSALEM DELIVERANCE CHURCH,

    Plaintiff,

v.                                               Case No. 10-12566

THOMAS RABETTE, et al.,

    Defendants.
                                                /

**OPINION AND ORDER (1) DENYING PLAINTIFF'S MOTION FOR EXTENSION OF TIME, (2) DENYING PLAINTIFF'S MOTION FOR DISCOVERY, (3) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON GROUNDS NOT RAISED BY A PARTY, AND (4) DISMISSING COUNT TWO WITHOUT PREJUDICE**

Before the court is Defendants'[1] motion for summary judgment in which they assert there is no genuine dispute about the only issue material to the amended complaint: whether Defendant Rabette was lawfully appointed as a special deputy sheriff. No hearing is necessary. E.D. Mich. LR 7.1(f)(2). The court will grant that motion on other grounds, will deny Plaintiff's pending motion for discovery and motion for an extension of time to amend the complaint, and will dismiss the remaining state-law claim without prejudice.

---

[1] As used in this order, "Defendants" refers to all Defendants but Evangelical Christian Credit Union ("ECCU"). Even though ECCU did not file a motion for summary judgment, the court's grant of Defendants' motion and dismissal of the state-law claim resolves all claims against ECCU. Therefore, the court is inclined to grant summary judgment in favor of ECCU. Under Federal Rule of Civil Procedure 56(f)(1), the court must provide Plaintiff with "notice and a reasonable time to respond" before granting summary judgment for a nonmovant. Therefore, the court will enter judgment on Count One in favor of all defendants no earlier than April 26, 2011. Before that date, Plaintiff may file a response to this order if there is a nonfrivolous basis for arguing that the court's holding as set forth herein should not apply with equal force to Plaintiff's claims against ECCU.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a Michigan non-profit corporation that financed with a mortgage certain real estate that it owns and uses as a church. (Am. Compl. ¶¶ 2-3, 30.)  Plaintiff defaulted on its mortgage obligation, and its creditor, ECCU, initiated foreclosure proceedings in April 2009 under Michigan's foreclosure by advertisement statute, Mich. Comp. Laws § 600.3201-.3285.  (2/8/11 ECCU Resp. Br. 5.)  The sale, originally scheduled for May 12, 2009, was postponed by automatic stay when Plaintiff filed for bankruptcy under Chapter 11 on May 11, 2009.  (*Id.*)  Plaintiff never filed a bankruptcy plan in that action, and the stay was eventually lifted on November 12, 2009.  (*Id.* at 5-6.)  On November 24, 2009, Plaintiff filed a notice of *lis pendens* with the Oakland County Register of Deeds.  (*Id.* at 6.)  On December 22, 2009, Plaintiff filed a pro se lawsuit in state court against ECCU, but did not serve the summons and complaint. (*Id.*)

The foreclosure sale was eventually conducted on December 29, 2009, by Defendant Thomas Rabette, a special deputy sheriff for Defendant Oakland County, who was at that time also the registered agent for Defendant American Process Service, Inc.  (*Id.* at 5; Am. Compl. ¶¶ 4, 10.)  ECCU purchased the property at the sale. (Am. Compl. ¶ 11.)

On August 5, 2010, after the six-month redemption period had lapsed, ECCU filed an eviction action.  (2/8/11 ECCU Resp Br. 6.) Plaintiff at first defaulted, but counsel for Plaintiff had the default set aside because this federal action was pending, and the eviction action was dismissed on September 10, 2010.  (*Id.*)

2

## B. Procedural History

Plaintiff filed the complaint in this case pro se on June 29, 2010, virtually moments before the redemption period following the December 29, 2009, sheriff's sale was to end. Observing that a corporation cannot proceed pro se and must be represented by an attorney, the court ordered Plaintiff to show cause on August 2, 2010. Plaintiff obtained an attorney, and filed an amended complaint on August 27, 2010. The court held a scheduling conference on November 18, 2010, in which it determined the factual issue presented by the case was narrow, and that only a short period of limited and tightly focused discovery would be necessary to determine the threshold issue, *viz.*, whether Defendant Rabette was lawfully appointed. (11/19/10 Order 1.) The court ordered the parties to exchange certain documents and authorized limited interrogatories. (*Id.* at 1-2.)

Utterly disregarding the agreement at the conference and the spirit of the resulting order, Plaintiff served Defendants with more than two hundred interrogatories to which Defendants responded with a motion for a protective order. After a hearing, the court granted the order and quashed the interrogatories. At that hearing, the court invited Defendants' motion for summary judgment, and stated that any discovery Plaintiff reasonably required in order to respond to that motion could be sought by affidavit or declaration under Rule 56(d).

However, on January 26, 2011, before Defendants could file their motion, Plaintiff filed its own motion to dismiss the case without prejudice. The matter was given a higher priority and briefed, but at the hearing Plaintiff withdrew the motion when faced with the prospect of paying attorney fees. *See* Fed. R. Civ. P. 41(a)(2). Meanwhile,

3

Defendants filed their motion for summary judgment on February 1, 2011. When briefing resumed after the delay occasioned by consideration of Plaintiff's motion for voluntary dismissal, Plaintiff filed the anticipated motion for discovery pursuant to Federal Rule of Civil Procedure 56(d) on March 18, 2011.

After reviewing and researching the motions, on March 28, 2011, the court ordered Plaintiff to show cause why Defendants' motion should not be granted on grounds not raised by Defendants; specifically, the court noted that it appeared that the Sixth Circuit's holding in *Northrip v. Federal National Mortgage Association*, 527 F.2d 23 (6th Cir. 1975)—the sheriff's participation in Michigan's foreclosure by advertisement statute is not "state action"—forecloses Plaintiff's claims under 42 U.S.C. § 1983. (3/28/11 Order 2.) *See* 527 F.2d at 28-29; *Ray v. Oakland Cnty. Drain Comm'n*, 115 F. App'x 775, 777 (6th Cir. 2004); *Williams v. Wayne County*, No. 09-14328, 2011 WL 479959, at *3-5 (E.D. Mich. Feb. 4, 2011). Rule 56(f)(2) requires the court to provide Plaintiff with notice and a reasonable time to respond, and the court gave Plaintiff two weeks to explain why *Northrip* does not control this action.

Plaintiff timely responded on April 11, 2011, with a filing entitled "Plaintiff's Response to Order to Show Cause, Motion for Extension of Time to Amend the Complaint."[2]

---

[2] The court implores Plaintiff's counsel to review once more the guidelines for practicing before this bench. Throughout the course of this litigation, Plaintiff's counsel has inexplicably and repeatedly failed to follow the rules with which nearly every attorney who practices in this court complies. Most recently, both of Plaintiff's motions resolved by this order appear on the court's docket as "Motion for Extension of Time to File Response/Reply." (*See* Dkt. ## 52, 56.) Neither of these pleadings is, in fact, a "motion for an extension of time to file a response or a reply." In addition, when a filing is docketed, any exhibits to it are a continuation of that filing, not a separate docket

## II. STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). "After giving notice and a reasonable time to respond, the court may . . . grant the motion on grounds not raised by a party . . . ." Fed. R. Civ. P. 56(f)(2).

## III. DISCUSSION

### A. Motion for Summary Judgment and Motion for Discovery

Plaintiff attempts to distinguish *Northrip* by suggesting that this court misconstrued its holding in the order to show cause. Plaintiff characterizes *Northrip* thus: "[T]he *Northrip* case challenged Michigan's nonjudicial foreclosure statutes by

---

entry, E.D. Mich. LR App. ECF R18(b) ("Each exhibit must then be filed and identified *as a separate attachment to the paper* . . . ." (emphasis added)), a standard which Plaintiff's counsel has ignored in several filings, (s*ee* Dkt. ## 27-30, 41-42, 45-46, 52-54, 56-57), in spite of an earlier demonstration of his ability to comply with the Rules, (*see* Dkt. ## 3, 21).
  Finally, Plaintiff's most recent "motion," (Dkt. # 56), is styled as a response to the court's order to show cause combined with a motion for extension of time to amend the complaint. Unless explicitly permitted by the court, attorneys are forbidden from combining motions with responses. *See* E.D. Mich. LR App. ECF R5(e); *see also* Motion Practice (Civil), Practice Guidelines for Judge Robert H. Cleland, http://www.mied.uscourts.gov/Judges/guidelines/topic.cfm?topic_id=69.
  Lest this warning be perceived as all bark and no bite, the court reminds Plaintiff's counsel that a knowing violation of these rules is sanctionable, E.D. Mich. LR App. ECF R4 (citing E.D. Mich. LR 11.1), and Plaintiff's counsel should not be surprised if any additional failures to comply with the local rules are met with stricken filings and monetary sanctions.
  For the sake of efficiency, the court will simply construe Plaintiff's response as a motion for an extension of time to file an amended complaint that happens to be *responsive* to the order to show cause, since that motion will be denied on its merits regardless of whether it is undertaken now as it lies, or later if it were re-filed correctly.

asserting that nonjudicial foreclosure deprives property owners of their rights without the due process of a hearing." (4/11/11 Mot. ¶ 6.) Plaintiff also attempts to distinguish *Williams*, which applied *Northrip*, by pointing to the "glaring difference" that *Williams* involved allegations that the sheriff failed to sign the special deputy sheriff appointment form, while this case involves allegations of "conflict of interest and public corruption." (*Id.* ¶ 7.) Perhaps aware, like Belshazzar, of the writing on the wall, Plaintiff concludes, "[e]ven if Plaintiff concedes that Count One, regarding the federal claim . . . may be dismissed based upon *Northrip*," Plaintiff desires more time to add to its complaint a claim under the civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, and says 60 days are needed "to secure co-counsel to assist Plaintiff." (*Id.* ¶ 8.)

This case falls squarely within *Northrip*, *Ray*, and *Williams*. Those cases were centered on Michigan's foreclosure by advertisement statute, as is this one. Those cases brought constitutional claims that the Fourteenth Amendment's Due Process Clause or Equal Protection Clause had been violated because of a state official's participation in the foreclosure process. And those cases rejected those claims because foreclosure by advertisement in Michigan does not involve state action. Plaintiff's argument that the facts before this court are distinguishable because of alleged public corruption or conflicts of interest are of no moment. Even assuming, *arguendo*, that "public corruption" or a "conflict of interest" arose when Plaintiff's church was sold, if there is no state action, there can be no due process or equal protection claim. *See* U.S. Const. amend. XIV, § 1 ("[N]or shall any *State* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its

jurisdiction the equal protection of the laws." (emphasis added)).  Moreover, Plaintiff cites no authority recognizing a public corruption exception to the rule set forth in *Northrip*, and none is apparent to the court.  Two weeks' notice is more than sufficient for Plaintiff to conduct legal research and craft an argument for why *Northrip* does not control.  Defendants' summary judgment motion is ripe for decision.  Because additional facts are irrelevant to this determination of law, no discovery is necessary.  This case is indistinguishable from the binding precedent of *Northrip*, and summary judgment must be granted—on legal grounds not raised by Defendants' fact-centric motion—on Plaintiff's § 1983 claim.

## B. Motion for Extension of Time to File an Amended Complaint

The resolution of Plaintiff's motion for an extension of time to file an amended complaint depends on whether the court would be inclined to grant the motion based on Plaintiff's present averments as to the contents of the amended complaint.  A motion to amend at this late stage, in the absence of the opposing parties' consent, requires the court's leave, which is "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a).

If justice requires anything in this case, it requires the motion to be denied.  This action is not a civil RICO action, nor has it ever been.  The first mention of RICO claims was in Plaintiff's motion for discovery under Rule 56(d), filed nearly nine months after the case was initiated.  (3/18/11 Mot. Br. 9.)  Importantly, Plaintiff did not diligently move to amend its complaint after its first notice of a possible claim.  United States District Court is a public forum for aggrieved parties to bring their reasonably-focused disputes to be adjudicated.  It is not a laboratory for creative attorneys and parties to tinker with

experimental legal theory by trial and error: if one claim fails in the face of precedent more than thirty-five years old (42 U.S.C. § 1983), just amend and try another (18 U.S.C. § 1964). Were the RICO claims to fail, to what might Plaintiff next turn? The Free Exercise Clause? Intentional infliction of emotional distress? The court will not further prolong this case in order to entertain additional whimsical theories or dilatory tactics. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating "undue delay, bad faith or dilatory motive on the part of the movant" are grounds for denying a motion to amend a complaint); *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010).

### C. Supplemental Jurisdiction

With summary judgment granted against Plaintiff on its only federal count, the court turns to what becomes of Plaintiff's quiet title claim. In its motion, Plaintiff argues that the court should exercise supplemental jurisdiction over its quiet title claim irrespective of the merits of its federal claim, and consequently should open the gates of discovery. If the court declines to exercise jurisdiction, Plaintiff, foreshadowing its plans for yet further litigation in state court, says that the quiet title claim should be dismissed without prejudice.

Once the court has exercised supplemental jurisdiction, it need not dismiss the state law claim merely because the federal claim failed. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 952-53 (6th Cir. 2010). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."

*Gamel*, 625 F.3d at 952 (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)) (internal quotation marks omitted); *see* 28 U.S.C. § 1367(c)(3).  The court must weigh the factors set forth in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988), to determine whether to retain jurisdiction.  *Gamel*, 625 F.3d at 951-52.  Those factors are judicial economy, convenience, fairness, and comity.  *Carnegie-Mellon*, 484 U.S. at 350; *Gamel*, 625 F.3d at 951-52.

True, § 1367(c)(3) and *Gamel* address what becomes of state law claims where all federal claims have been dismissed, while here the court has resolved to grant summary judgment on the lone federal claim.  However, where, as here, the court has granted summary judgment on a pure question of law that should have been raised by Defendants in a motion to dismiss, and where the parties have not invested significant resources in discovery, the grant of summary judgment is indistinguishable from dismissal on the legal merits of the claim for the purposes of the supplemental jurisdiction analysis, with the exception that the extra effort expended on the matter by the time summary judgment is reached may tip the scales in favor of retaining jurisdiction in some cases.  *See Carnegie-Mellon*, 484 U.S. at 350 ("[A] federal court should consider and weigh in each case, *and at every stage of the litigation*, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction . . . ." (emphasis added)).

But the scales are not so tipped here.  Because the factual issue presented by Plaintiff was narrow, the court provided only narrow discovery, and has minimized judicial expenditures in pursuit of an answer to that question.  All three of the other factors—convenience, fairness, and comity—also weigh in favor of dismissal.  Quiet title

9

claims invoke quintessentially state-law questions and very rarely breathe the jurisdictionally-constricted air of the federal courthouse. It therefore would be more fair to the parties to have a state court resolve any quiet title claim, and comity obviously demands the same. There may be some inconvenience occasioned on the parties by having to pursue any claim or respond to any defense in yet another action, but that inconvenience is outweighed by the convenience afforded by litigating a property action in a state court most familiar with Michigan title law. This second claim—the remainder of the case—must be dismissed.

### D. Rule 11 Caution

The court is well aware of the pain, disappointment, and frustration attendant to a property foreclosure; numerous owners of foreclosed properties have in recent years presented themselves in court trying to stop or otherwise manage the process. The court can only imagine that, where the foreclosed property houses a church, those feelings must be magnified several fold. Bad things sometimes happen to good people. But not every bad thing that happens in the world is a constitutional tort. A foreclosure process that started some two years ago has been hindered and obstructed through nearly every conceivable means by Plaintiff, and as a result, Plaintiff appears to have maintained control of the property for an unusually extended time.

Financial institutions are owned, ultimately, by ordinary people; these are often stock investors, but in the case of credit unions they are simply the customers. Financial institutions and their owners have legal rights, too. Tellingly, Plaintiff has not argued that it did not mortgage its property or that it did not default on its payments.

ECCU loaned Plaintiff money and secured the loan with the property, and has now been bogged down in what appears to be frivolous litigation for years.

All litigation must eventually come to an end. While this court does not have the authority to bar all legal causes of action that may be available to Plaintiff as it seeks to retain its building, the court will give Plaintiff this notice: abuses of the legal system will be tolerated only up to a point. Although the court entertains no plan to impose sanctions in this case, the court is more than satisfied that the complaint and amended complaint in this matter were filed without "an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b). More to the point, it seems quite apparent that this action was presented to generate a delay, and, as noted above, the claims were not warranted by existing law or a nonfrivolous argument for modifying it. *See* Fed. R. Civ. P. 11(b)(1)-(2). Thus, before Plaintiff runs to the state courthouse to file a suit to quiet title (or whatever other glittering claim may momentarily capture its attention), or before Plaintiff files a new federal complaint with civil RICO claims, the court strongly recommends that Plaintiff and its counsel carefully analyze the legal and factual bases for its allegations; Michigan courts have the power to sanction, too. *See* Mich. Ct. R. 2.114.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Plaintiff's motion for extension of time [Dkt. # 56] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's "Motion for Discovery Pursuant to [Federal Rule of Civil Procedure] 56(d)" [Dkt. # 52] is DENIED.

IT IS FURTHER ORDERED that Defendants' "Motion for Summary Judgment" [Dkt. # 33] is GRANTED on grounds not raised by a party. *See* Fed. R. Civ. P. 56(f)(2).

Finally, IT IS ORDERED that Count Two of the Amended Complaint is DISMISSED WITHOUT PREJUDICE.

Judgment will follow separately. As noted in footnote 1, supra, the court will withhold judgment at least until April 26, 2011, to provide Plaintiff with a reasonable time to respond to the court's inclination to enter judgment in nonmovant ECCU's favor. *See* Fed. R. Civ. P. 56(f)(1).

  s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: April 20, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 20, 2011, by electronic and/or ordinary mail.

  s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522